## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER G.,** | : | |
| *through his parents Stephen G. and* | : | |
| *Sheila G.,* | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 20-131** |
| | : | |
| **DOWNINGTOWN AREA SCHOOL** | : | |
| **DISTRICT**, | : | |
| **Defendant.** | : | |

### MEMORANDUM

Alexander G. ("Plaintiff"), a minor child, through his parents, Steven G. and

Sheila G., filed the instant Motion for Judgment on the Administrative Record

(ECF No. 12) requesting this Court reverse the hearing officers' rulings that (1) the

Due Process Complaint was untimely filed and (2) Defendant Downingtown Area

School District ("Defendant" or the "District") provided Plaintiff with a free

appropriate public education ("FAPE") under the Individuals with Disabilities

Education Act ("IDEA"), 20 U.S.C. ¶ 1400 *et seq*,. and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. ¶ 794.  ECF No. 13.  Plaintiff moved the

Court to bifurcate the Motion for Judgment on the Administrative Record,

requesting that the Court first determine whether the Due Process Complaint was

untimely filed pursuant to the statute of limitations.  ECF No. 18.  As Defendant

did not oppose this motion, the Court granted Plaintiff's Motion to Bifurcate.  ECF

No. 21.  The Court conducted oral argument on the issue of statute of limitations.

ECF No. 24.

## I.  **FACTUAL BACKGROUND**

Plaintiff attended a local parochial school beginning in kindergarten, during

which time his reading skills were evaluated on two occasions by the local

intermediate.  ECF No. 3-1 ¶¶ 1-2.[1]  In August 2015, prior to the start of Plaintiff's

fourth grade year, Plaintiff's parents asked the District to conduct a full evaluation

of Plaintiff.  *Id*. ¶ 3.  The District completed an initial evaluation report of Plaintiff

on October 19, 2015, finding that Plaintiff was eligible for special education under

the classification of a specific learning disability in reading.  *Id*. ¶¶ 4-6.  In January

2016, midway through Plaintiff's fourth grade year, Plaintiff's parents disenrolled

Plaintiff from the parochial school and enrolled Plaintiff in the District.  *Id*. ¶ 8.  In

mid-January 2016, Plaintiff was given benchmark testing and the initial proposed

Individualized Education Program ("IEP") was revised to include the updated

---

[1] ECF No. 3-1 refers to the Finding of Facts in the hearing officer's Final Decision and Order. "Factual findings from the administrative proceedings are to be considered prima facie correct." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003).  "A federal district court reviewing the administrative fact finder in the first instance is . . . required to defer to the [administrative law judge's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record."  *Id*.  Plaintiff bases the statute of limitations argument on a purported legal error and not on any error in fact finding.  *See* ECF No. 13 ("The Court should reverse the legal error on the statute of limitations.").  The Court therefore accepts the Findings of Facts in the hearing officer's Final Decision and Order (ECF No. 3-1) for the purposes of Plaintiff's argument regarding statute of limitations in the Motion for Judgment on the Administrative Record (ECF No. 12).

information. *Id*. ¶ 9. At the start of fifth grade, in 2016, the District assessed

Plaintiff for the specific reading program that would address Plaintiff's needs. *Id*.

¶¶ 11-12. In September 2016, Plaintiff's parents expressed concern with Plaintiff's

progress in reading, writing, and math and requested that the District conduct a

reevaluation. *Id*. ¶ 16. Defendant produced the reevaluation report in December

2016, which found that Plaintiff continued to be eligible for education services and

continued to display a need for specially designed reading instruction. *Id*. That

same month, the IEP team convened to develop a new annual IEP and decided to

add additional supports for math. *Id*. ¶ 18.

During the fifth grade year, Plaintiff showed progress in all areas of reading.

*Id*. ¶ 19. When the IEP team met in May and June 2017 to review Plaintiff's IEP

for the sixth grade year, Plaintiff's parents advocated strongly for Plaintiff's

proposed reading fluency goal to be changed to read that Plaintiff would read

fluently on grade level by the end of sixth grade. *Id*. ¶ 22. Although the District

did not believe the goal for reading fluency was realistic, the District acceded to

the Parent's request and revised the goal in the proposed IEP. *Id*. The sixth grade

IEP team reconvened for an annual revision in late November 2017. *Id*. ¶ 45. At

that time, Plaintiff's parents requested an independent education evaluation. *Id*.

Plaintiff's parents and the District received the results of the independent education

evaluation on June 12, 2018. *Id*.

On August 10, 2018, Plaintiff's parents expressed their belief that the program for Plaintiff was not appropriate and provided Defendant with written notice of their intent to place Plaintiff in a private school and seek tuition reimbursement in the event they could not agree on Plaintiff's IEP at the upcoming IEP meeting. *Id*. On August 13, 2018, the IEP team convened to review the independent evaluation and to revise Plaintiff's IEP in preparation for seventh grade. *Id*. ¶ 57. On September 26, 2018, the IEP team reconvened again and revised Plaintiff's seventh grade IEP. *Id*. ¶ 66. Following the August 2018 IEP meeting, Plaintiff's parents decided to place Plaintiff at a private school for 7th grade. *Id*. ¶ 74.

## II.  <u>PROCEDURAL HISTORY</u>

Plaintiff's parents filed a Special Education Due Process Complaint on March 15, 2019 seeking compensatory education for Defendant's alleged violations of the IDEA and Section 504 for the entire time Plaintiff was enrolled in the District. ECF No. 1 ¶ 3; ECF No. 3-34.  Following an evidentiary hearing held specifically to address the "knew or should have known" date for purposes of the IDEA statute of limitations, the presiding hearing officer found that the Due Process Complaint was untimely filed and limited Plaintiff's claims to those accruing after March 15, 2017, two years prior to the date the parents filed the Due Process Complaint.  ECF No 1 ¶ 5; ECF No. 4 ¶ 5.  After a second hearing, the presiding hearing officer determined that the District provided Plaintiff with a FAPE and therefore

concluded Plaintiff was not entitled to compensatory education nor tuition reimbursement.  ECF No. 3-1 at 19.

Plaintiff thereafter filed a Complaint in this Court pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Chapters 14 and 15 of the Pennsylvania Code (ECF No. 1) and a Motion for Judgment on the Administrative Record (ECF No. 12) requesting the Court reverse the hearing officers' findings that the IDEA statute of limitations limited Plaintiff's claims to those accruing after March 15, 2017 and that the District did provide Plaintiff with a FAPE.

Plaintiff moved this Court to bifurcate its proceedings so as to initially decide whether the hearing officer erred in ruling that the statute of limitations barred recovery prior to March 15, 2017 before deciding whether Defendant had provided Plaintiff with a FAPE.  ECF No. 18.  Because there was no opposition from Defendant, this Court granted Plaintiff's Motion to Bifurcate and decided to rule on the statute of limitations issue before determining any further issues.  ECF No. 21.  The Court held oral argument on the statute of limitations issue only.  ECF No. 24.

### III.  STANDARD OF REVIEW

"The Individuals with Disabilities Education Act [] broadly authorizes the courts to provide appropriate relief, including compensatory education, to children who have been deprived by their state or local educational agencies of a free appropriate public education."  *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 604 (3d Cir. 2015).  "Under the IDEA, the reviewing court 'is obliged to conduct a modified de novo review, giving due weight to the underlying administrative proceedings."  *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (quoting *MM v. Sch. Dist. of Greenville County*, 303 F.3d 523, 530–31 (4th Cir. 2002)).  "Factual findings from the administrative proceedings are to be considered prima facie correct."  *Id*. (citing *MM*, 303 F.3d at 531).  "The court is not . . . to substitute its own notions of sound educational policy for those of local school authorities." *S.H.*, 336 F.3d at 270 (quoting *MM*, 303 F.3d at 531).  "When schools use their expertise to address each child's distinct educational needs, we must give their judgments appropriate deference." *K.D. by & through Dunn v. Downingtown Area Sch. Dist.*, 904 F.3d 248, 250-51 (3d Cir. 2018) (*quoting Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S.Ct. 988, 1001-02 (2017)).

## IV.  **DISCUSSION**

"To comply with the IDEA, school districts must identify and evaluate all children who they have reason to believe are disabled under the statute." *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (citing *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 244 (3d Cir. 2012)).  "Once a school district has identified a child as eligible for IDEA services, it must create and implement an Individualized Education Plan (IEP) based on the student's needs and areas of disability." *Munir*, 723 F.3d at 426 (citing *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729–30 (3d Cir. 2009)).  "[T]o satisfy the IDEA, the district must offer an IEP that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'"  *Munir*, 723 F.3d at 426 (quoting *P.P.*, 585 F.3d at 729–30) (additional citations omitted).

The IDEA imposes a "two-year filing deadline for a due process complaint after the reasonable discovery of an injury." *G.L.*, 802 F.3d at 605.  "The discovery rule controls here."  *Id*. at 613.  Therefore, "the date from which any limitations period begins to run is the date the parents 'knew or should have known' of the basis for the claim."  *Id*.

"[C]laims that are known or reasonably should be known to parents must be brought within two years of that 'knew or should have known' date, and parents

7

may not, without satisfying one of the two statutory exceptions, knowingly sit on their rights or attempt to sweep both timely and expired claims into a single 'continuing violation' claim brought years later." *Id.* at 625 (citing *D.K.*, 696 F.3d at 248). "[W]here parents neither knew nor reasonably should have known of the special needs of their child or of the educational system's failure to respond appropriately to those needs, the other partner in this endeavor—the school district itself—still has its independent duty to identify those needs within a reasonable time period and to work with the parents and the IEP team to expeditiously design and implement an appropriate program of remedial support." *Id.* (citations omitted).

Under the IDEA, "once a violation is reasonably discovered by the parent, any claim for that violation, however far back it dates, must be filed within two years of the 'knew or should have known' date." *Id.* at 620. "If it is not, all but the most recent two years before the filing of the complaint will be time-barred; but if it is timely filed, then, upon a finding of liability, the entire period of the violation should be remedied." *Id.* at 620-21.

Plaintiff moves for judgment on the administrative record, contending that the "knew or should have known" date was within two years of March 15, 2019, the date on which Plaintiff filed the Due Process Complaint, and therefore the entire period of the alleged violation should be remedied, and not limited to two years.

ECF No. 13 at 1-2.  Plaintiff contends that "the IDEA limitations period runs from the date on which a parent, who is not a special education expert, gains knowledge or notice of (discovers) the legal 'injury' to the child by reason of the school district's failure to deliver a FAPE."  *Id*. at 27 (collecting cases).

Plaintiff contends that "a 'fine-grained analysis' is mandatory to determine not when the Parents knew or should have known of the actions of the District, but rather when they realistically knew or should have known that those actions constituted a legal denial of FAPE, from the perspective of a non-legal lawperson and parent."  *Id*. at 29 (emphasis omitted).  Plaintiff contends that the hearing officer "articulated no rationale whatever in granting the District's Motion, let alone the required fine-grained analysis."  *Id*.

Plaintiff contends that Plaintiff's parents did not know, nor should they have known, of the "inappropriateness of [Plaintiff's] program and the evaluations on which his program was based, and of the District's failure to meet all of [Plaintiff's] needs, until the Parents obtained the June 12, 2018 Neuropsychological Evaluation Report completed by Dr. Mary Lazar."  *Id*.  Plaintiff claims this is the "knew or should have known" date, because it was only on this date that Plaintiff's parents discovered or should have discovered his "legal education ***injury***."  *Id*. at 30.

In the alternative, Plaintiff contends that the earliest the parents were put on notice of the District's violations was the fall of 2017, "when they were informed of the Sixth Grade Center's more accurate testing, which showed that Alec was two reading grade levels below the level the District previously told them he achieved fluency in."  *Id.*

Plaintiff asks the Court to remand the matter for a "further hearing regarding the improperly excluded claims and appropriate relief awarded for those violations to the extent necessary to make [Plaintiff] whole for the educational deprivations caused by those violations."  *Id.*

Defendant, on the other hand, disputes that the hearing officer's failure to provide an analysis of her rulings in itself renders her findings erroneous.  ECF No. 17 at 24.  Defendant notes that the Third Circuit has not had occasion to comment on a standard for the IDEA reasonable discovery or "knew or should have known" date, as the "knew or should have known" date was agreed to by the parties in *G.L. Id.* at 24-25 (citing *G.L.*, 802 F.3d at 604) (additional citations omitted).

Defendant disputes that the "knew or should have known" date begins to run when "parents come to understand their legal rights," but instead begins to run when "parents are able to conclude that their child's needs are unmet."  ECF No. 17 at 25-26 (citations omitted).  Defendant further disputes Plaintiff's claim that

10

the parents did not know about the alleged violations until they were informed about the sixth grade center's "more accurate testing." *Id*. at 28.  Defendant contends that it was the parents' "request to increase a goal over [the District's] recommendation at the end of fifth grade, and the [District's] offered progress reporting" when the parents knew, or should have known, of any alleged violations.  *Id*.

Plaintiff replies that there were "discrepancies between [Plaintiff's] fifth- and sixth-grade assessment scores, which show that at the beginning of sixth grade, his reading level was either well below what the District itself had reported to the Family multiple times . . . or that the sixth grade reporting was itself an under-reporting." ECF No. 19 at 3-4.  Plaintiff contends that the only way for Plaintiff to know what was "really going on was to call in a third-party expert, as it did during [Plaintiff's] highly irregular sixth-grade year." *Id*. at 6.

Defendant responds that Plaintiff's parents received Notice of Recommended Education Placement documents numerous times and also received evaluations on October 19, 2015, December 9, 2016, and April 4, 2018.  ECF No. 22 at 1-2.  Defendant further notes that Plaintiff's IEPs were revised multiple times throughout 2015 to 2019, "often specifically in response to Parental concerns." *Id*. at 2.  Finally, Defendant reiterates that at the end of Plaintiff's fifth grade school

year, his parents "advocated very strongly for [his] reading fluency goal to be changed to be reading on grade level at the end of 6th grade." *Id*.

This Court finds that the hearing officer did not err in determining that Plaintiff's Due Process Complaint was untimely filed.  The factual findings show that Plaintiff's parents knew or should have known of Plaintiff's alleged educational injury as early as September 2016, since, by that time, Plaintiff had been evaluated by the District and was under the District's instruction for six months, and yet the parents still expressed concern with Plaintiff's progress and requested that the District conduct a reevaluation report.  ECF No 3-1 ¶ 16. Alternatively, Plaintiff's parents knew or should have known of Plaintiff's educational injury by December 2016, when the District produced the reevaluation report, which showed that Plaintiff continued to be eligible for special education services, and the IEP team added additional supports for math.  *Id*. ¶¶ 16-18.

Plaintiff's emphasis of discovery of a "legal" injury, or recognition of an educational injury under a "legal layperson standard," implies that the "knew or should have known" date under the IDEA is tolled until the parents realize that the defendant's actions constituted a "legal" wrong.  But the distinction between discovering Plaintiff's "injury" and Plaintiff's "legal injury" is irrelevant here. *Compare In re Risperdal Litigation*, 223 A.3d 633 (2019) (distinguishing, for purposes of statute of limitations, between experiencing a physical condition and

12

understanding that that physical condition was the result of another person's conduct) *with Brady P. by Beth v. Cent. York Sch. Dist.*, No. 1:16-CV-2395, 2018 WL 1367325, at *8 (M.D. Pa. Mar. 16, 2018) (finding that when parents were told their child was "at serious risk of never becoming a competent reader and writer" despite the specialized education he had been receiving from the school district, "reasonably diligent parents . . . were on notice of possible existing injury to their child which may have also been ongoing.") (emphasis omitted).

At the time when Plaintiff's parents knew that Plaintiff had already been evaluated by the District once and had been under the District's instruction for six months, and yet still expressed concerns with Plaintiff's progress and requested a reevaluation, Plaintiff's parents showed that they were able, and did, recognize Plaintiff's alleged educational injuries.  The parents did not need to have actual knowledge that the District was the cause of their son's educational injury, but reasonably diligent parents would have been aware of Plaintiff's allegedly existing or ongoing injury under these facts.

Therefore, Plaintiff's parents knew or should have known of Plaintiff's alleged educational injury in September 2016, or, at the latest, in December 2016. Both of those dates are more than two years before Plaintiff filed the Due Process

Complaint on March 15, 2019.  Therefore, the factual findings support the hearing officer's conclusion that the Due Process Complaint was untimely filed.[2]

## V.  **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (ECF No. 12) is denied as to Plaintiff's argument that the hearing officer misapplied the statute of limitations.  An appropriate order will follow.


**DATED: <u>December 18, 2020</u>**                    **BY THE COURT:**

                                                                              **/s/ Chad F. Kenney**

                                                                              _____

                                                                              **CHAD F. KENNEY, JUDGE**

---

[2] Even though the hearing officer did not provide a written decision, the factual findings support the hearing officer's conclusion that the Due Process Complaint was untimely filed.  Therefore, this Court need not remand this matter to consider any potential FAPE violations prior to March 15, 2017.

14